IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE J. SHAW,

                Plaintiff,                OPINION & ORDER

    v.

                                                 12-cv-497-wmc

EDWARD WALL *et al.*,

                Defendants.

---

Plaintiff Terrance Shaw is incarcerated at Oshkosh Correctional Institution ("OCI"). After an initial screening, the court granted him leave to proceed on: (1) claims under the Rehabilitation Act against defendants Wall and Jones; (2) First Amendment political speech claims against defendants Jones and Loker; and (3) First Amendment retaliation claims against defendants Messing, Jones, Loker and Metzen. (*See* Opinion & Order (dkt. #15) 18.)[1] Defendants subsequently moved to amend the court's screening order to sever Shaw's claims against Metzen, arguing that she was improperly joined. The court granted that request and severed those claims, asking Shaw to advise the court whether he wished to proceed in a separate lawsuit against Metzen or dismiss his claims against her. (Dkt. #25.)

Now before the court is Shaw's motion for reconsideration of its screening order. (Dkt. #26.) Shaw asks the court to reconsider not only its decision to sever Metzen from this case but also its decision to deny him leave to proceed on various other claims. For the reasons enumerated below, the court will grant Shaw's motion as to his Equal Protection claim against Messing, but will deny that motion in all other respects. Insofar as Shaw seeks reconsideration

---

[1] Plaintiff's original pleading alleged claims against various defendants for (1) discrimination based on his disabilities, (2) denial of his First Amendment political speech rights, and (3) First Amendment retaliation; and unlawful seizure in violation of the Fourth Amendment.

of the court's decision on his motion to recruit volunteer counsel (dkt. #28), the court will also deny that motion at this time.[2]

OPINION

I. Joinder of Claims against Metzen

As previously noted, a plaintiff may only join "either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Fed. R. Civ. P. 18(a). As a corollary, a plaintiff is only allowed the joinder of several defendants if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a). The Seventh Circuit has emphasized that "unrelated claims against different defendants belong in different suits" and that federal joinder rules apply to prisoners just as to other litigants. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This court previously determined that Shaw's claims against Metzen, which stem from allegedly retaliatory denials of law library time, were unrelated to his claims against the other defendants, which arise from Shaw's complaints regarding his ability to access the prison canteen and subsequent communication with a Disability Rights Wisconsin attorney.

Shaw argues that the claims against Metzen were properly joined in this lawsuit, pointing to allegations in paragraphs 41 through 48 of his Supplemental Complaint (dkt. #6) that Metzen was photocopying his confidential legal materials on an on-going basis. More particularly, Shaw argues that the court can infer based on these allegations that Metzen had access to his disability-related filings, which in turn gives rise to the inference that Metzen's

---

[2] As in its earlier ruling, Shaw is free to formally renew his motion either to provide additional detail as to the exceptional circumstances surrounding this case or because of changed circumstances. For example, should one or more of Shaw's claims require extraordinary discovery efforts beyond his ability or survive summary judgment, the court would be willing to reconsider its ruling.

retaliation was based not on his complaints against her but instead on his actions in filing the present lawsuit.

The court finds these multiple layers of inferences prove too much. As an initial matter, Shaw does not allege that *any* retaliatory conduct occurred before he filed a complaint against Metzen. To the contrary, his complaint actually states that Metzen began to harass Shaw by denying him library time *after* he filed complaints against her. (*See* Supp. Compl. (dkt. #6) ¶ 20.) The dates he provides support this timeline: he apparently filed an Offender Complaint regarding library sign-out and sign-in on May 24, 2011, and the harassment he alleges occurred beginning in January 2012. (*See id.* at ¶¶ 21-31.) He also explicitly alleges that Metzen wrote conduct report No. 2176219 "to RETALIATE against [him] for filing prior complaints against her for harassment." (*Id.* at ¶ 31 (emphasis in original).) Furthermore, Shaw does not allege that the "legal documents" that a library worker discovered in Metzen's work area included any documents related to this lawsuit. Again to the contrary, he specifically states that she had copies of conduct report No. 2176219, which Metzen wrote about Shaw; the disposition form from the hearing on that conduct report; and "Institutional Grievances" that Shaw filed about Metzen's behavior. (*Id.* at ¶ 42.) Most fundamentally, nowhere in his complaint does Shaw plausibly suggest that Metzen's harassment was based on anything other than the complaints against her. It is too late for him to do so now, at least in this lawsuit. Accordingly, the court declines to grant Shaw's motion to reconsider the decision to sever his claims against Metzen.

## II. Rehabilitation Act Claim against Weiringa

Shaw also asks the court to reconsider his claim under the Rehabilitation Act against defendant Steve Weiringa.[3] He correctly points out that the court failed to address this claim in

---

[3] Shaw styles this claim as one for relief under the Americans with Disabilities Act ("ADA"), but

3

its screening order, although Weiringa was named as a defendant and the complaint contained factual allegations of his conduct. Accordingly, the court now considers the facts in Shaw's complaint to determine whether he has stated a claim against Weiringa under the generous standard at screening. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972).

Shaw alleges that he has numerous physical and mental impairments substantially limiting one or more major life activities, including work. He also alleges that while eligible to attend canteen at the same time as most other inmates, he cannot do so solely because his impairments render him unable to work or participate in jobs and educational programs. According to Shaw, prisoners unable to participate in such programs are forced to attend canteen last, when many essential items are sold out.

In his supplemental complaint, Shaw alleges that sometime before December 13, 2010, he contacted Disability Rights of Wisconsin regarding OCI's practice of requiring disabled inmates to go to canteen last. Attorney Michele M. Hughes then sent a letter to Unit Director Jones on December 13, 2010, stating that denying Shaw access to the canteen based on a disability would violate the ADA. On March 22, 2011, Shaw received a letter from Hughes indicating that she had spoken with Deputy Warden Weiringa and that he had said that Shaw was not disabled but instead chose not to work. (*See* Compl. Exh. 3 (dkt. #1-3).) Weiringa's statement to Hughes was false and misleading.

Shaw's argument in his motion for reconsideration focuses on Weiringa's "personal involvement." If this claim were brought under 42 U.S.C. § 1983, this focus might be proper. Shaw's claim is for relief under the Rehabilitation Act, however, as this court previously recognized, so the question of whether Weiringa was "personally involved" in depriving him of

---

as discussed in this court's previous screening order, it will be considered under the Rehabilitation Act to avoid any question of sovereign immunity. (*See* Opinion & Order (dkt. #15) 9-11.)

access to a program or activity is irrelevant. Rather, the relevant question is whether Weiringa is a proper defendant under 29 U.S.C. § 794(a).

Because Weiringa does not personally constitute an entity that receives federal funds and has refused Shaw access to a federally-funded program, he cannot be sued in his individual capacity under the Act. *See, e.g., Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002) ("Because the individual defendants do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act."); *Tadder v. Univ. of Wis.-Rock Cnty.*, No. 13-cv-105-wmc, 2013 WL 3943498, at *4 (W.D. Wis. July 30, 2013) ("To the extent sued in their personal capacity, neither of the defendants is (personally) an entity refusing Tadder access to a federally-funded program, and thus there can be no cause of action under the Rehabilitation Act."); *Dent v. City of Chicago*, No. 02 C 6604, 2003 WL 21801163, at *1 (N.D. Ill. Aug. 1, 2003) ("[T]he law is well-settled that there is no individual liability under . . . the Rehabilitation Act."). Moreover, to the extent Shaw wishes to sue Weiringa in his official capacity, Weiringa's presence in this lawsuit would be redundant, since Shaw has already been granted leave to proceed under the Act against Warden Edward Wall and Unit Director Matthew Jones in their official capacities. *Cf. Tadder*, 2013 WL 3943498, at *4 ("To the extent sued in their official capacity, [individual defendants'] presence is redundant."). Accordingly, the court will not grant Shaw leave to proceed against Weiringa.

**III. Equal Protection Claim against Messing**

Next, Shaw asks the court to address his Equal Protection claim against Messing, whom he alleges denied him the right to make a telephone call while approving other similarly-situated inmates' telephone calls. As an initial matter, Shaw is correct that the court's original screening order failed to address this claim. In part, this was because Shaw's factual allegations in support

of this claim are minimal: he alleges that similarly situated prisoners were permitted to make free 1-800 telephone calls, but that once he had filed his ADA lawsuit, Messing denied Shaw the right to call the Wisconsin Bar Association, while granting other similarly-situated prisoners the right to make free calls.

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "Even individuals not claiming to be a part of any identifiable group may assert an equal protection claim under a 'class of one' theory if there is no rational basis for the differential treatment." *Borzych v. Frank*, 340 F. Supp. 2d 955, 970 (W.D. Wis. 2004) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). "It is enough to state such a claim if a plaintiff 'suggests that discriminatory motives impelled discriminatory treatment of him.'" *Id.* (quoting *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996)).

Here, though barely, Shaw *has* alleged that he was denied a free phone call while other similarly-situated prisoners were granted that right. Even though Shaw does not explicitly allege that Messing lacked a rational basis for the denial, the court agrees it could infer as much from his allegations that Messing denied him the phone call for an improper reason -- that is, to retaliate against him for exercising his First Amendment rights. Accordingly, under the admittedly low bar at screening, the court agrees Shaw has stated a claim for an Equal Protection violation and will grant him leave to proceed against Messing on that claim.[4]

---

[4] Defendants have already filed a motion for summary judgment in this case. To avoid prejudice, however, they may have 21 days to answer, move, or otherwise respond to Shaw's equal protection claim and may, within 90 days, bring a separate motion for summary judgment on that new claim should they wish.

**IV. Substantive Due Process Claim against Metzen**

Shaw also contends that the court misunderstood his substantive due process claim. Shaw acknowledges that he has no expectation of privacy in his cell and appears to concede that neither the confiscation nor the destruction of his legal documents violated his due process rights. Rather, Shaw argues that he should be allowed to proceed with a claim that Metzen seized, copied and held all of his confidential legal documents in order to "gain some unfair legal advantage over Shaw" or to "alert[] other prison staff of Shaw's anticipated lawsuit." (Mot. for Reconsideration (dkt. #26) 5.)

As noted in this court's screening order, the analysis of a substantive due process violation by an executive actor proceeds in four steps, the first of which is a determination of the interest said to have been violated. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 462 (7th Cir. 2007). Shaw focuses on his right to privacy in his legal materials, but (as discussed previously and further below) it does not appear he has such a right. Instead, Shaw has a right to access the courts, but as noted in the previous screening order, there is no suggestion that that right has been impaired. Accordingly, the court does not see any fundamental right at stake here. Even if it did, the court does not believe that Metzen's alleged conduct is so outrageous as to "shock the contemporary conscience," as required by *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 n.8 (1998).

Finally, the Supreme Court has "always been reluctant to expand the concept of substantive due process." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). For that reason, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273

7

(1994) (plurality opinion)). In essence, Shaw alleges an unlawful "search" and "seizure" of copies of his legal materials, which is covered by the Fourth Amendment. Indeed, many of the cases he cites to support his substantive due process claim are in fact Fourth Amendment cases. The court, therefore, sees no error in its decision to deny Shaw leave to proceed on a substantive due process claim.

**V. Fourth Amendment Claim against Metzen**

Finally, Shaw asks the court to reconsider its decision denying him leave to proceed on a Fourth Amendment claim against Metzen. Shaw now acknowledges that he has no expectation of privacy in the *inspection* of his legal materials, but argues that Metzen's actions in *reading* them "for nefarious purposes" gives rise to a Fourth Amendment claim. In support, he cites two cases, *Altizer v. Deeds*, 191 F.3d 540 (4th Cir. 1999), and *Stow v. Grimaldi*, 993 F.2d 1002 (1st Cir. 1993), but neither is on point. Both *Altizer* and *Stow* were First Amendment cases in which prison officials' inspection of outgoing mail was upheld as justified by security concerns. *Altizer*, 191 F.3d at 549; *Stow*, 993 F.2d at 1004. Neither case suggests that Shaw has a Fourth Amendment claim for Metzen's actions in reading his legal materials. Furthermore, the *Altizer* court specifically noted that the Federal Bureau of Prisons "has been given the authority to *read and inspect* the outgoing mail of every inmate residing in a medium or high security prison." *Id.* at 549 n.15 (emphasis added).

This court's original decision was based upon *Mitchell v. Dupnik,* 75 F.3d 517 (9th Cir. 1996), and *Hudson v. Palmer,* 468 U.S. 517 (1984). In *Mitchell,* the court found a search of an inmate's legal papers to be constitutional. 75 F.3d at 523. In *Hudson,* the Supreme Court held that prisoners have no reasonable expectation of privacy enabling them to invoke the protections of the Fourth Amendment when their personal property is destroyed. *Hudson*, 468

8

U.S. at 530. Since Shaw offers no authority to counter these cases, he has pointed to no manifest error of law or fact justifying the reinstatement of his Fourth Amendment claim.

### VI. Renewed "Motion" to Appoint Counsel

Shaw also filed a "Response" to this court's denial of his motion to appoint counsel. (Dkt. #28.) To the extent that Shaw intends this response to renew his motion for appointment of counsel, the court will deny it.

Shaw has certainly met the threshold requirement of demonstrating his reasonable efforts to find a lawyer on his own and that those efforts have been unsuccessful. Indeed, he submits rejection letters from *seven* attorneys from whom he unsuccessfully sought assistance. (*See* dkt. #28-1.) Next, Shaw must demonstrate that the facts and circumstances of this case are such that it exceeds his capabilities to present it to the court on his own. Here, "the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). At this time, the court has little evidence suggesting that Shaw requires counsel to assist him. Shaw has litigated his case ably thus far, though apparently with the assistance of jailhouse lawyers. Shaw has also not indicated that he is facing any difficulties in particular with which a volunteer attorney could assist.

Shaw again emphasizes, and the court recognizes, that he has mental and emotional issues that may ultimately impede his ability to litigate this case. Shaw should be aware, however, that the court receives many more requests for counsel than the small pool of available volunteers can accommodate. Only those cases presenting exceptional circumstances can be considered for court-assistance in recruiting a volunteer. Therefore, the court will deny Shaw's renewed motion, but he should feel free to renew his request for counsel at a later date. In

9

doing so, Shaw should include specific details explaining those tasks which he is unable to perform on his own and for which he needs counsel, as well as any extraordinary circumstances surrounding the facts of this particular case.

ORDER

IT IS ORDERED that plaintiff Terrance Shaw's Motion for Reconsideration (dkt. #26) is GRANTED with respect to his Equal Protection claim against defendant Messing and DENIED in all other respects.

Entered this 23rd day of May, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge