IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE J. SHAW,

                Plaintiff,                OPINION & ORDER

v.

                                              12-cv-497-wmc

EDWARD WALL *et al.*,

                Defendants.

---

Plaintiff Terrance J. Shaw brings claims for disability discrimination and multiple violations of his constitutional rights against various staff members at Oshkosh Correctional Institution ("OSCI"). Before the court at present is defendant Jim Messing's motion for summary judgment on Shaw's "class-of-one" equal protection claim.[1] (Dkt. #73.) The court agrees with Messing that the undisputed facts do not support a class-of-one equal protection claim. Accordingly, the court will grant his motion for summary judgment. Also before the court are Shaw's motion to reconsider its denial of his request for unspecified relief from alleged intimidation and harassment (dkt. #75) and separate motion for injunctive relief (dkt. #76), both of which will be denied for reasons explained below.

---

[1] A "class-of-one" equal protection claim requires a plaintiff to show that "he was intentionally treated differently from other similarly situated individuals and that there was no rational basis for this difference in treatment." *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012). Some cases also require a showing of improper motive or "illegitimate animus." *Id.* Which standard applies is unsettled, *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014), but is not at issue in this case.

UNDISPUTED FACTS[2]

Defendant Jim Messing is a social worker at OSCI. Messing has generally allowed, and continues to allow, inmates to make toll-free calls from his office phone, so long as they have an appropriate reason. He is not, however, required to permit such calls. Usually, an "appropriate reason" involves an inmate's property or its repair, although Messing at least once permitted Shaw to make a toll free "1-800" call from his office phone in order to obtain contact information for attorneys.

Messing will *not* permit inmates to make phone calls to individual attorneys from his office phone, because there are policies in place at OSCI governing inmate-attorney phone calls. Under OSCI Procedure No. 700.20, inmates may call specific attorneys with legal matters only with the permission of the offender records supervisor. Inmates must submit a request to the records office to obtain permission for an attorney call, which are to be scheduled and made from the records office during normal institution business hours, except in the event of an emergency. The Inmate Handbook lays out this process in detail, informing inmates that they must use DOC-1631, a "Telephone Request Add/Delete" form, to request a call with an attorney. Inmates may also schedule an attorney phone call by submitting an Interview Request to the records office, or by asking their attorney to call the institution and schedule a phone call. Shaw has access to the Inmate Handbook, and the parties agree that he was aware of the process for scheduling attorney phone calls.

On February 23, 2011, Shaw asked to make a phone call from Messing's office phone. At the time, attorney Michele Hughes of Disability Rights of Wisconsin was already

---

[2] Defendants did not file additional proposed findings of fact in support of their second motion for summary judgment. Accordingly, the court adopts these facts, which it finds to be material and undisputed unless otherwise noted, from its previous opinion in this matter.

corresponding with Shaw and with OSCI on Shaw's behalf regarding his claims of disability discrimination.³  Still, Shaw avers that he told Messing the purpose of his call was to acquire referral information for a civil rights attorney, not to speak to Hughes or any other specific lawyer.

Messing disputes Shaw's version of their exchange on that day.  Messing avers that Shaw asked to use his office phone to make a legal phone call to a specific female attorney.  Pursuant to his general practice, Messing also avers that he did not believe it appropriate for Shaw to make a call to a specific attorney from his office phone.  Accordingly, Messing directed Shaw to submit his request to the records office pursuant to OSCI Procedure No. 700.20.

OPINION

**I.   Messing's Motion for Summary Judgment**

Defendant Messing raises three grounds for summary judgment on Shaw's class-of-one equal protection claim.  *First*, he contends that the Supreme Court's decision in *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591 (2008), forecloses class-of-one equal protection claims purporting to challenge discretionary prison decisions.  *Second*, he argues the denial of a single phone call does not rise to the level of a constitutional violation.  *Third*, he claims entitlement to qualified immunity.

---

³ Shaw claims that he never hired or retained Hughes to represent him, but he has placed into the record a letter from Hughes, dated March 22, 2011, in which she indicates she is continuing to work on his disability claim.  (*See* Compl. Ex. 3 (dkt. #1-3).)  Whether or not Shaw formally retained her as counsel, Hughes was undoubtedly working on his behalf during this period.

A. **Discretionary Acts**

In *Engquist*, the Supreme Court held that a public employee could not maintain a class-of-one equal protection claim based on allegations that she was treated differently from other similarly-situated employees on an arbitrary basis. While reaffirming that class-of-one claims exist in the equal protection context, the Court explained that those cases involve "the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Engquist*, 553 U.S. at 602. The Court further explained that:

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Id.* at 603. Allowing claims in such discretionary circumstances, the Court found, would mean that "governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort through them in a search for the proverbial needle in a haystack." *Id.* at 608. "In short," the Court held, "ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly 'constitutionalize the employee grievance.'" *Id.* at 609 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

As defendant points out, the rationale of *Engquist* has carried forward into contexts beyond public employment. For instance, in *Srail v. Village of Lisle*, 588 F.3d 940 (7th Cir. 2009), the Seventh Circuit rejected an equal protection claim because the decisions

4

challenged were "based on subjective and individualized assessments" and did not involve "any standards, let alone clear standards" on which such decisions were based. *Id.* at 945. Similarly, in *United States v. Moore*, 543 F.3d 891 (7th Cir. 2008), the Seventh Circuit held that *Engquist*'s logic was "equally applicable to the exercise of prosecutory discretion" and rejected a class-of-one claim based on an allegedly arbitrary decision to prosecute the plaintiff in federal, rather than state, court. *Id.* at 900-01. Some district courts, including this one, have also held that class-of-one claims likely fail in the prison context as well, at least as far as discretionary decisionmaking is concerned. *See, e.g., Taliaferro v. Hepp*, No. 12-cv-921-bbc, 2013 WL 936609, at *6 (W.D. Wis. Mar. 11, 2013) (noting that under *Engquist,* "class-of-one claims are likely never cognizable in the prison disciplinary context"); *Jackson v. Flieger,* No. 12-cv-220-bbc, 2012 WL 5247275, at *4 (W.D. Wis. Oct. 23, 2012) (same).

Admittedly, this case does not concern prison *discipline*, but the undisputed facts demonstrate that the decision whether to permit inmates to make toll-free telephone calls fell within Messing's discretion. Shaw does not dispute that Messing allows inmates to make calls from his office phone only if they have what *Messing* considers to be an "appropriate reason." Nor does Shaw dispute that Messing is never *required* to permit inmates to make calls from his phone. The decision Messing made to deny Shaw the phone call, therefore, cannot be characterized as anything but discretionary, which renders Shaw's class-of-one theory in this context a "poor fit." *Engquist*, 553 U.S. at 605.

Contrary to Messing's assertions, Shaw contends that this case remains cognizable under *Engquist* because there is a "clear standard against which departures" can be assessed. *Id.* at 602. Specifically, Shaw points to Messing's "usual practice" of allowing other inmates

5

to use his phone to make calls. Shaw does not cite any authority supporting his broad interpretation of *Engquist*, however. Nor does it make sense to interpret *Engquist* as Shaw does. *Engquist* sets up a dichotomy of decisions based on clear standards, which can support a class-of-one claim, versus decisions that are "quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 604. An individual actor's "usual practice" -- resting as it does on his own determination of whether an inmate has an "appropriate reason" for making a phone call -- unmistakably fits into the latter category.

The fact that there *is* a clear standard in place at OSCI for placement of inmate-attorney calls does not help Shaw, since he is not challenging that policy. On the contrary, Shaw claims his request was *not* to speak with his attorney. Even if the court accepts Shaw's version of events, as it must for summary judgment purposes, Messing's denial of his request was subjective and individualized, whether arbitrary or not.

This is not to hold that a class-of-one equal protection claim is *never* cognizable in the prison context. No doubt prison administrators have, in some contexts, established standards sufficiently clear to support those types of claims. Indeed, standards governing the placement of inmate-attorney calls may be among them. But this case does not present such a situation, because the undisputed facts establish that Messing's decision to grant or deny a phone call for a general referral to a civil rights attorney was discretionary. Accordingly, Messing is entitled to summary judgment on this claim.

B.  **De Minimis Deprivation**

Even if *Engquist* did not entitle Messing to summary judgment on an equal protection class-of-one claim challenging his exercise of discretion, the court also agrees that the denial of a single phone call was a *de minimis* imposition that does not rise to the level of a constitutional violation.  As this court recognized in dismissing Shaw's First Amendment retaliation claim against Messing, premised on the same conduct:

> Not only did Messing deny Shaw only a single phone call, it was a call that he was not required to grant in any event.  Moreover, the claimed denial occurred at a time when Shaw already had the assistance of attorney Hughes to pursue his claims of disability discrimination.  While the court has located no case directly comparable to this one, most retaliation cases allowed to proceed involve far more serious conduct.

(Sep. 30, 2014 Opinion & Order (dkt. #85) 22.)  The court did not decide whether the same reasoning applied to Shaw's equal protection claim at the time, but did note that as an isolated event not based on any suspect classification, "[the denial] appears to be no more than a *de minimis* imposition."  (*Id.* at 24 (citing *Lomax v. McCaughtry*, 731 F. Supp. 1388, 1394 (E.D. Wis. 1990)).)

Shaw has presented no evidence that changes the court's view on this question. He argues that Messing's decision precluded him from finding an attorney willing to take on his disability discrimination case, but he fails to address the undisputed fact that Hughes was actually working on his discrimination case at that same time.  (*See* Compl. Ex. 3 (dkt. #1-3).)  Shaw does not explain why Hughes could not have assisted him in locating an attorney willing to represent him in this litigation.  As importantly, Shaw does not explain why he had no other way of getting in touch with the Wisconsin Bar Association to take advantage of its "Pro Bono and Modest Means Programs."  He does not even explain why he did not

7

seek a different way to make the phone call he wanted to make. Absent some further explanation -- or some legal authority suggesting that the denial of something so *de minimis* as a single phone call is enough -- the court concludes that Messing's decision did not violate Shaw's constitutional rights.

Of course, this result is also bolstered by dismissal of Shaw's First Amendment retaliation claim -- which is premised on exactly the same conduct -- as *de minimis.* In *Thayer v. Chiczewski*, the Seventh Circuit considered parallel claims for First Amendment retaliation and class-of-one equal protection based on plaintiff Thayer's allegations that he was treated differently than other speakers at a conference due to his political activism. In the process of rejecting both claims, the Seventh Circuit initially noted

> that Thayer's class-of-one equal protection claim is seemingly a mere rewording of his First Amendment retaliation claim. Thayer alleges that he was treated differently than the other speakers at the "press conference" because of his political activism. It may be proper to find that the equal protection and First Amendment claims coalesce; thus, requiring that they fall together. *See Vukadinovich v. Bartels*, 853 F.2d 1387-1391-92 (7th Cir. 1988) (dismissing equal protection claim that constituted "a mere rewording of plaintiff's First Amendment-retaliation claim").

*Thayer*, 705 F.3d at 255. As in *Thayer*, Shaw's equal protection claim here is essentially a rewording of his First Amendment retaliation claim.

### C. Qualified Immunity

Finally, even if the denial of a single phone call constituted a violation of Shaw's equal protection rights, Messing would be entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

8

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As discussed above, *Engquist* and its progeny create significant doubt as to whether Shaw's claim is legally cognizable, given the discretionary nature of the decision at issue. Furthermore, the insignificant nature of the deprivation at issue -- even if not legally *de minimis* -- raises a real question as to whether Messing's denial violated any constitutional right at all.

Shaw's only response to the qualified immunity defense is his unsupported, conclusory statement that Messing acted "out of animus and spite, to hinder his desire to contact an attorney[.]" (Def.'s Br. Opp'n (dkt. #80) 5.) Not only does he offer *no* evidence to support this characterization of Messing's actions, the defense of qualified immunity is objective, not subjective. *See Harlow*, 457 U.S. at 817-18. The objective fact is that Messing was acting in a legally grey area, which is enough to make qualified immunity an alternative, legitimate basis for granting his motion for summary judgment.

**II. Other Pending Motions**

Shaw has also filed two additional motions seeking injunctive relief for various acts of alleged harassment. One is a motion for reconsideration of this court's order denying him unspecified relief against Sandy DeYoung, who allegedly "interrogated" him about his disability status after speaking with defendant Matthew Jones. (Dkt. #75.) Shaw acknowledges that no relief may lie in this suit against DeYoung, who is not a defendant, but asks the court to reconsider taking some sort of preliminary action against Jones, premising his request on the theory that Jones was the "primary actor" who "put[] the wheels in motion." (*Id.* at 1.)

9

As the court acknowledged in its original order denying preliminary relief, Shaw may have an independent First Amendment retaliation claim against Jones. To state such a claim, Shaw would have to allege that: (1) he engaged in protected First Amendment activity; (2) he "suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) there was a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). The second element presents an objective standard, not a subjective one, meaning that "[t]he question is not whether plaintiff has been deterred or is likely to be, [but rather] whether plaintiff's injury was 'so trivial that *a person of ordinary firmness* would not be deterred from' exercising his constitutional rights." *Jackson v. Thurmer*, 748 F. Supp. 2d 990, 1003 (W.D. Wis. 2010 (emphasis in original) (quoting *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989)). To proceed on such a claim, Shaw would also need to allege facts making it plausible that Jones was "personally involved" in the alleged retaliation. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010).

Assuming Shaw can allege all of these facts plausibly, he still cannot add such a claim in *this* lawsuit. As noted in the court's previous order, "[i]t is this court's policy to require a plaintiff alleging retaliation for initiating a lawsuit to present the claim in a lawsuit separate from the one that is alleged to have provoked the retaliation." *Cherry v. Berge*, No. 02-C-544-C, 2003 WL 23109395, at *1 (W.D. Wis. Jan. 27, 2003). An exception may be made "where it appears that the alleged retaliation would directly, physically impair the plaintiff's ability to prosecute his lawsuit," *id.* at *2, but the retaliation Shaw alleges -- harsh questioning on topics germane to his current suit -- does not fit that description. If Shaw truly can allege facts in good faith supporting an independent claim for retaliation against Jones in light of the above discussion of the law, he must bring it in a separate suit, which

10

the court will screen as required by the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A. Regardless, his request for reconsideration of such a claim *in this case* is denied.

The other motion before the court is Shaw's request for injunctive relief based on prison officials' alleged edict that he reduce the amount of legal paperwork in his cell. (Dkt. #76.) Essentially, Shaw alleges that prison officials did not enforce the rule limiting the amount of paperwork he can have in his cell until he began prosecuting this case and preparing to prosecute others. Thus, he argues that these officials are impeding his access to the courts as a means of retaliation for the lawsuits he has filed.

In response, defendants represent that Shaw has now complied with the requirement to send out or destroy the excess paperwork in his cell. If so, Shaw's request for injunctive relief would appear to be moot. In any event, Shaw has not shown it would be appropriate for the court to interfere with OSCI's policies regarding inmate property or the administration of those policies, particularly given that: (1) he asserts no claim that the policy itself is unconstitutional; and (2) he has not alleged that its application is actually preventing him from litigating this or any other lawsuit. Finally, to the extent Shaw wishes to bring any such challenge, he must do so in a separate lawsuit, which the court will screen pursuant to the PLRA. His new request for injunctive relief will, therefore, also be denied.

ORDER

IT IS ORDERED that:

1) Defendant Jim Messing's motion for summary judgment on the equal protection claim (dkt. #73) is GRANTED.

11

2) Plaintiff Terrance J. Shaw's motions for reconsideration (dkt. #75) and for injunctive relief (dkt. #76) are both DENIED.

Entered this 17th day of December, 2014.

                                BY THE COURT:

                                /s/
                                _____
                                WILLIAM M. CONLEY
                                District Judge