IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE J. SHAW,

Plaintiff,

v.

EDWARD WALL *et al.*,

Defendants.

OPINION & ORDER

12-cv-497-wmc

The court held a telephonic status conference in this matter on April 23, 2015, to address the parties' various pending motions and re-establish a trial date. Plaintiff Terrance J. Shaw appeared *pro se*; defendants appeared by Assistant Attorney General Jody J. Schmelzer. This opinion confirms the court's rulings made during the telephonic conference and briefly articulates the basis for those rulings.

BACKGROUND

Plaintiff Terrance J. Shaw was originally granted leave to proceed in this lawsuit on claims for: (1) disability discrimination, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*; (2) retaliation, in violation of the First Amendment; and (3) infringement on political speech rights, also in violation of the First Amendment. (Oct. 16, 2013 Opinion & Order (dkt. #15).) A later opinion granted Shaw's request to reinstate an Equal Protection claim against one of the existing defendants. (May 23, 2014 Opinion & Order (dkt. #55).)

On summary judgment, the court granted judgment for defendants on all claims except for those under the Rehabilitation Act. (Sept. 30, 2014 Opinion & Order (dkt.

#85); Dec. 17, 2014 Opinion & Order (dkt. #100).) Briefly, the basis of Shaw's Rehabilitation Act claim is his contention that inmates with school or job responsibilities are permitted to attend canteen first. Shaw is disabled, however, and he has averred that prison officials refuse to offer him a job he can perform, so he must wait until everyone else attends canteen before he can attend. By then, Shaw has averred that many of the products he wishes to purchase are gone.

Defendants argued on summary judgment that (1) Shaw actually attends canteen in the first half of the ten to fifteen groups that attend from "W Building"; (2) the canteen almost never sells out of products, and when it does there are alternative brands available; and (3) Shaw does not have a job because he refuses to work, not because prison officials refuse to offer him one. In opposition, Shaw presented his own sworn statement that he attends last; that the canteen frequently sells out of products that are unavailable elsewhere; and that he is on "involuntary unassigned" status, meaning he has indicated his willingness to accept any job he is offered consistent with his disabilities. These factual disputes prevented the court from entering summary judgment on this claim.

## OPINION

### I. Defendants' Motions in Limine (dkt. #109)

#### A. Compensatory Damages

Defendants first argue that Shaw cannot claim compensatory damages because the PLRA prohibits recovery of such damages "without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Seventh Circuit has recognized that § 1997e(e) bars recovery of compensatory damages for mental and emotional injuries suffered without a corresponding

physical injury. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003). That bar applies to claims under the Rehabilitation Act. In *Cassidy v. Indiana Department of Corrections*, 199 F.3d 374 (7th Cir. 2000), the Seventh Circuit considered whether § 1997e(e) requires a showing of physical injury in cases under the Rehabilitation Act and Americans with Disabilities Act as well as 42 U.S.C. § 1983. It answered in the affirmative, concluding that "the plain language of § 1997e(e) . . . unambiguously states that 'No Federal civil action' shall be brought for mental or emotional damages without a prior showing of physical injury." *Cassidy*, 199 F.3d at 376. "In light of this plain language," the court declined to "carve out exceptions for which Congress did not provide." *Id.* Thus, Shaw must make a prior showing of physical injury before he can attempt to recover compensation for his mental and emotional suffering.

Defendants argue that Shaw has not demonstrated enough of a physical injury to overcome § 1997e(e), because any physical effects he has suffered are *de minimis*. They cite a Fifth Circuit case, *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997), in support. In *Siglar*, the Fifth Circuit held that in interpreting § 1997e(e) to determine what constitutes a "physical injury," courts should be guided by "well established Eighth Amendment standards . . . That is, the injury must be more than *de minim[i]s*, but need not be significant." *Id.* at 193. The Fifth Circuit then applied those standards to find that the district court did not abuse its discretion in concluding that a sore, bruised ear was *de minimis* such that the inmate had failed to state a claim for "physical injury" under the PLRA. *See also Hoskins v. Craig*, No. 11-296-GPM, 2011 WL 5547460, at *2-3 (S.D. Ill. Nov. 15, 2011) (applying *de minimis* standard and concluding that emotional damage that

caused insomnia and headaches cannot support claim for "physical injury" allowing for compensatory damages under PLRA).

In response, Shaw argues that the discrimination (1) caused him heart pains; and (2) caused him two weeks of discomfort due to a stuffy nose and lack of nasal spray. The heart pains appear to be caused by emotional and mental stress; various district courts have held that when emotional distress manifests itself physically but no other physical injury occurs, § 1997e(e) bars the suit. *E.g.*, *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1136 (D. Colo. 2010) ("Moreover, 'a number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries.'") (quoting *Hughes v. Colo. Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009)); *Kossie v. Crain,* 602 F. Supp. 2d 786, 792 (S.D. Tex. 2009) (depression, anxiety, anger causing migraine headaches insufficient to qualify as physical injury); *Ashann-Ra v. Comm. of Va.*, 112 F. Supp. 2d 559, 566 (W.D. Va. 2000). The Seventh Circuit has also previously rejected an inmate's attempt to claim "physical injury" based on his own testimony that he was "mentally and physically depressed" and "lost at least 50 pounds." *See Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006).

As for the claim that Shaw suffered from a severe stuffy nose as the result of his inability to purchase nasal spray, the majority of authority supports defendants' position that *de minimis* injury cannot qualify as "physical injury" under the PLRA. *E.g.*, *Jarriett v. Wilson,* 162 F. App'x 394, 400-01 (6th Cir. 2005); *Alexander v. Tippah Cnty., Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (nausea and vomiting "was de minimis" and did not overcome bar of § 1997e(e); citing *Siglar*); *Jackson v. Carey,* 353 F.3d 750, 758 (9th Cir. 2003) (42 U.S.C. § 1997e(e) requires physical injury that "need not be significant but must be more than *de*

*minimis*") (quoting *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002)); *Dolberry v. Levine*, 567 F. Supp. 2d 413, 417-18 (W.D.N.Y. 2008) ("Although plaintiff does allege that he suffered a skin rash due to the lack of showers, that is a *de minimis* injury that does not give rise to a claim."); *see also Lynch v. Flowers Foods Specialty Grp.*, No. 08-CV-554, 2011 WL 3876951, at *4-5 (E.D. Wis. Aug. 31, 2011) (permitting prisoner to proceed on request for compensatory damages where "the record contain[ed] evidence of a more than *de minimis* physical injury"). Furthermore, at least one district court has specifically found that a stuffy nose qualifies as *de minimis*. *Johnson v. Desoto Cnty. Sheriff Dep't*, No. 3:13cv43-MPM-JMV, 2013 WL 3944284, at *2 (N.D. Miss. July 31, 2013).

Admittedly, it seems somewhat odd to apply the Eighth Amendment *de minimis* standard to discrimination claims, since it is far less likely that discrimination will give rise to the "physical injury" required by § 1997e(e) as compared to, for example, an Eighth Amendment lawsuit under 42 U.S.C. § 1983. But in the absence of any contrary authority, and given the *Cassidy* court's holding that § 1997e(e)'s "physical injury" requirement applies to discrimination claims under the Rehabilitation Act, as well as to constitutional torts under § 1983, the court will grant defendants' motion and preclude Shaw from recovering compensatory damages in this matter.

**B. Punitive Damages**

Defendants next ask that Shaw be precluded from seeking punitive damages. In *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014), the Seventh Circuit applied the Supreme Court precedent of *Barnes v. Gorman*, 536 U.S. 181 (2002), to hold

that punitive damages are unavailable in private causes of action under the Rehabilitation Act. Accordingly, Shaw will not be permitted to seek punitive damages in this matter.

**C. Removal of Matthew Jones as Defendant**

Shaw was originally granted leave to proceed against defendants Wall and Jones in their official capacities on the Rehabilitation Act claim.[1] Defendants now ask that Jones be removed as a defendant because (1) he is no longer a proper defendant, since he has retired and has no "official capacity" within the Department of Corrections; and (2) any claim against Jones is duplicative of the official-capacity claim against DOC Secretary Wall. The court agrees and will dismiss Jones as a defendant.

**D. Retaliation**

Defendants also ask the court to exclude any evidence of alleged retaliation at OSCI on the grounds that it is unfairly prejudicial and would be confusing or misleading. Given that defendants have been granted summary judgment on Shaw's retaliation claims, the court agrees that evidence relating solely to those claims is not relevant to this lawsuit. Shaw may, of course, offer evidence of retaliation if it is relevant to his remaining Rehabilitation Act claim -- that is, if it has some bearing on his claims that the Department of Corrections has discriminated against him on the basis of his disability.

**E. Previously Dismissed Claims**

Next, defendants ask the court to exclude any evidence or argument related to claims that are no longer part of this lawsuit. As above, Shaw may not offer evidence or argument

[1] The Department of Corrections is the proper defendant in a Rehabilitation Act claim like this one. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 & n.2 (7th Cir. 2012). A suit against the Secretary of the Department of Corrections in his official capacity is a suit against the Department of Corrections itself. *Id.*

that is *only* relevant to his First Amendment retaliation claims; his First Amendment political speech claims; or his Equal Protection claim, because the court has already granted summary judgment in favor of defendants on those claims. However, to the extent that Shaw wishes to present some evidence or argument that touches on those claims but is *also* relevant to his Rehabilitation Act claim, he may do so.

### F. Evidence of Qualifying Prior Criminal Convictions

Finally, defendants intend to admit evidence of prior convictions with respect to Shaw himself and inmate witness David Stadelmayer.[2] Under Federal Rule of Evidence 609(a)(1)(A), such evidence is admissible, subject to Rule 403, for the purpose of "attacking a witness's character for truthfulness" when the crimes in question were punishable by death or imprisonment for more than one year. Defendants also represent that it has not been more than ten years since Shaw or Stadelmayer was released from confinement for these convictions, which renders the limitation contained in subsection (b) inapplicable. Accordingly, defendants may introduce the fact of the prior convictions for the limited purpose of attacking Shaw and Stadelmayer's character for truthfulness.

## II. Subpoena Requests

### A. Michele Hughes (Dkt. #104)

Shaw first requested that the court subpoena Michele Hughes, an attorney with Disability Rights Wisconsin, to be his "expert witness" at trial. Hughes worked with Shaw on his canteen-based claim before Shaw filed this lawsuit, although according to Shaw, she

---

[2] Initially, defendants also planned to admit evidence of the prior convictions of inmate witness James Doyle. At the telephonic conference, however, Shaw informed the court that he no longer sought a subpoena for Doyle, in light of his newly expressly hesitancy to testify on Shaw's behalf.

never actually represented him. Rather, Hughes corresponded with defendant Matthew Jones on Shaw's behalf in late 2010 and early 2011, explaining that Shaw was a qualified individual with a disability and that the prison's policy denying Shaw access to canteen services constituted disability discrimination.

The request to subpoena Hughes will be denied. As explained during the telephonic conference, Hughes could not testify to any *facts* that are relevant to the only claim remaining in this lawsuit. To the extent that Shaw wished her to testify that defendants' actions constituted disability discrimination, she may not offer testimony "largely on purely legal matters and made up solely of legal conclusions[.]" *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). The court will address any legal issues at the close of trial, based on the evidence presented and pursuant to the law.

**B. Inmate Witnesses (dkt. #118)**

Shaw also asks the court to subpoena Mark Larson, John Cowling, Ben Szymanski, Daniel Henningsen, Phillip Rowin, Corey Buckleman and Howard Adcock. Larson is the W-Building Program Aide, and he apparently assists disabled inmates on "Involuntary Unassigned" status to canteen as part of his job duties.[3] The remaining inmates are disabled and, according to Shaw, are permitted to attend canteen in the very first group, with other, able-bodied inmates.

The court will grant the request to subpoena Larson, whose testimony would be particularly relevant to Shaw's claim and uniquely helpful in understanding the functioning of the OSCI canteen system. Because Larson is an inmate, the court will issue a writ for his appearance at trial. With respect to the other inmates, the court will permit Shaw to

[3] Shaw confirmed at the telephonic conference that Larson is an inmate worker.

present their testimony but reserves on the issuance of writs. Assistant Attorney General Schmelzer is directed to inform the court by the end of this week whether OSCI has the capacity for those inmates' testimony to be presented via videoconferencing.

During the conference, Shaw requested that the court subpoena former defendant Jones, who can testify as to his reasons for: (1) granting Shaw permission to attend canteen first, with the other disabled inmates; and (2) withdrawing that permission a week later. That request will be granted, and a subpoena will be issued for Jones to testify at trial.

Finally, Shaw previously advised the court that he plans to present the testimony of David Stadelmayer, an inmate housed at OSCI who has worked in the canteen for nineteen months and would testify that the canteen frequently sells out of items by the end of the day. (*See* dkt. ##88-89.) Shaw will be permitted to present Stadelmayer's testimony at trial as well. As with the above inmates, the court reserves on the issuance of a writ pending notification from defendant's counsel as to whether OSCI can support the presentation of Stadelmayer's testimony by videoconference.

## III. Motion for Reconsideration Regarding Recruitment of Counsel (dkt. #116)

Also pending is a motion for reconsideration regarding Shaw's request for *pro bono* counsel. Shaw has requested counsel on multiple occasions in the past, and the court has rejected those requests for a number of reasons, including that: his case is not particularly complex; he has effectively litigated his own case up to the present; and he presented no specific facts suggesting that he was unable to present his own case coherently to the jury. Indeed, the trial here now essentially comes down to a swearing contest as to whose description of the canteen system is factually correct.

More recently, the court noted that although Shaw has documented health problems, he did not suggest that those problems would impair his ability to present his case. Now, Shaw's newest motion focuses on his psychological disabilities -- that is, his PTSD.

In particular, Shaw now indicates that everything he has presented to the court up until the present has been drafted by jailhouse lawyers, and that stress causes him to break down into uncontrollable crying fits. (Mot. Reconsideration (dkt. #116) ¶ 6.) He also states that his psychological problems prevent him from concentrating for a sustained period of time, and that when under stress, he suffers heart pains that require him to take nitroglycerin. (*Id.*) Shaw has also submitted a declaration from one of his jailhouse lawyers, Vances H. Smith. (Dkt. #117.) Smith states that he has assisted Shaw throughout this litigation by researching and drafting the complaint, supplemental complaint and all the summary judgment documents. He believes Shaw is unable to present his case at trial by "staying on point and presenting his facts to support the relevant legal theory to be decided." (*Id.* at ¶ 5.)

As explained at the status conference, while the court is sympathetic to Shaw's desire for counsel, it does not believe this case exceeds his ability to present it coherently to the court during trial. *See Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). Shaw's remaining claim is straightforward and rests on several clearly-defined factual disputes to which he and his other fact witnesses can testify. Although many of his written filings were apparently drafted by other inmates, Shaw was articulate, calm and coherent during the telephonic conference. Finally, as this is now a court trial, the court can more overtly direct Shaw as to the acceptable presentation of his case and the formalities of trial procedure, to the extent he requires assistance. Accordingly, the court will deny Shaw's motion for reconsideration.

## IV. Motion to Strike Jury Demand (dkt. #126)

Finally, defendants' most recent motion seeks to strike the jury demand in this matter. That motion depended on the success of their request to preclude Shaw from seeking compensatory and punitive damages. Now that the court has granted that motion in limine, the relief Shaw can receive is limited to injunctive relief and nominal damages. The Seventh Amendment, however, provides that the right to a jury trial shall be preserved "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. "[O]ne dollar is recognized as an appropriate value for nominal damages." *Corpus v. Bennett*, 430 F.3d 912, 916 (8th Cir. 2005); *see also* 3C Fed. Jury Practice & Instructions § 173:73 (5th ed.) (pattern jury instruction requiring jury to "return a verdict for plaintiff in the nominal amount of one dollar").

Because Shaw cannot recover compensatory and punitive damages, his suit no longer involves a value in controversy of more than twenty dollars. Accordingly, the jury demand will be stricken, and this matter will be tried to the court on Wednesday, July 8, 2015.

## ORDER

IT IS ORDERED that:

1) Plaintiff Terrance J. Shaw's motion for issuance of subpoena for Michele Hughes (dkt. #104) is DENIED.

2) Defendants' motions in limine (dkt. #109) are GRANTED as set forth above.

3) Defendant Matthew Jones is DISMISSED from this lawsuit.

4) Plaintiff's motion for reconsideration (dkt. #116) is DENIED.

5) Plaintiff's motion for issuance of subpoenas for Mark Larson, John Cowling, Ben Szymanski, Daniel Henningsen, Phillip Rowin, Corey Buckleman and Howard Adcock (dkt. #118) is GRANTED with respect to Mark Larson. The court RESERVES as to the remaining inmates, pending notification from defendants'

counsel as to the videoconferencing capabilities at Oshkosh Correctional Institution.

6) A subpoena is to issue against Matthew Jones to compel his testimony at trial.

7) Defendants' motion to strike the jury demand (dkt. #126) is GRANTED.

8) This matter will be tried to the court beginning at 8:30 A.M. on Wednesday, July 8, 2015.

Entered this 28th day of April, 2015.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge